NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK
JUNE 12, 2014
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: <br><br> **KENNETH I. SCHWARTZ,** <br><br> Debtor. | Case No.: 10-21505 (DHS) <br><br> Judge: Donald H. Steckroth, U.S.B.J. |
| **STEVEN P. KARTZMAN,** <br> **as Chapter 7 Trustee,** <br><br> Plaintiff, <br><br> v. <br><br> **KENNETH I. SCHWARTZ,** <br><br> Defendant. | Adv. No.: 12-01344 (DHS) |

## OPINION

**APPEARANCES:**

Mellinger, Sanders & Kartzman, LLC
Steven P. Kartzman, Esq.
Adam G. Brief, Esq.
101 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
*Counsel for Plaintiff*


Law Offices of Scott J. Goldstein, LLC
Scott J. Goldstein, Esq.
3175 Route 10 East, #300C
Denville, New Jersey 07834
*Counsel for Debtor-Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The Court is presented with a motion for summary judgment ("the Motion") filed by Steven P. Kartzman, the chapter 7 trustee ("Trustee"), against Kenneth I. Schwartz (the "Debtor" or "Defendant") as to counts one and two of the complaint (the "Complaint").  In count one of the Complaint, the Trustee seeks turnover from the Debtor in the aggregate amount of $134,217 for the post-petition dissipation of property of the estate pursuant to 11 U.S.C. § 542(a).  Count two alleges the Debtor acquired property of the estate and knowingly and fraudulently failed to report or surrender such property to the Trustee in violation of  11 U.S.C. § 727(d)(2). Specifically, the Trustee alleges the Debtor failed to disclose:  (i) the pre and post-petition existence and use of numerous bank accounts; (ii) the existence of prepetition business interests; (iii) an interest in the Kenneth I. Schwartz Irrevocable Trust; as well as (iv) a complicated web of transfers orchestrated by the Debtor between various bank accounts that he controlled.

In response, the Debtor filed a declaration and memorandum in opposition to the Motion asserting that there are disputes of material fact as to whether the Debtor was the beneficial and/or legal owner of various bank accounts, and whether the Debtor possessed the requisite intent to defraud creditors and/or the Trustee.  The Debtor argues the relevant accounts are not property of the estate and thus revocation of Debtor's discharge pursuant to Section 542 is inappropriate.  The Debtor further asserts that his nondisclosure was the result of his reliance on the advice of prior counsel and thus he lacks any fraudulent intent.

**FACTUAL BACKGROUND**

The Debtor was a developer of residential real estate. On March 6, 2008, Debtor received a disbursement of $500,000.00 from a closing on a project at Jackson Square Corners, LLC ("Jackson Square"), which was deposited in an account ending in 4009 (the "4009 Account") at TD Bank.  He thereafter transferred $321,000.00 to an account ending in 4083 (the "4083

Account") at Royal Alliance Associates, Inc. for the purpose of creating a trust for his adult children. With assistance of counsel, Debtor prepared a Trust Agreement, titled the Kenneth I. Schwartz Irrevocable Trust (the "Trust"). The Trust Agreement named Steven Singer, Eric Schwartz, and Melanie Schwartz as the Trustees and named the sole income beneficiaries of the Trust as Eric and Melanie Schwartz, and Debtor's sister, Roberta Schwartz, as beneficiaries upon distribution of the Trust corpus on his death. In order to fund the Trust, an account was established at TD Bank, ending in 2218 (the "Trust Account") which was funded from the 4083 Account at Royal Alliance Associates, Inc. At the time of the petition date, the balance of the Trust Account was $21,975.00.

At all relevant times, the Debtor's son, Eric Schwartz, held legal title to an account at Royal Alliance Associates ending in 6906 (the "Royal Bank Account"), which was funded by Debtor. On August 18, 2008, Debtor deposited $80,000.00 into the Royal Bank Account.

In addition, Debtor retained 100% interest in an entity known as Dimensional Builders Corporation ("DBC"). DBC maintained an account at TD Bank with an account number ending in 7165 (the "DBC Account") with a balance of $12,242.00. The DBC Account was funded with Debtor's money from the 4009 Account. Debtor diminished most of the funds from the DBC Account but for the sum of $526.60 as of May 31, 2010.

The Debtor encountered financial difficulty in 2009 and transferred money from the Trust Account, with each transfer accompanied by a promissory note to the Trust. Debtor retained the law firm of Rothbard, Rothbard, Kohn & Keller in connection with the preparation and filing of his bankruptcy petition, schedules, and statements. The Debtor filed a Chapter 7 petition on April 16, 2010 (the "Petition Date"), and on December 10, 2010, the Debtor received a discharge under Section 727(a) of the Bankruptcy Code.

4

As of the Petition Date, Debtor did not disclose his interest in the Trust Account, the DBC Account, or the Royal Bank Account (collectively the "Prepetition Property") on Schedule B to his Petition. In his June 2013 deposition, Debtor admitted unequivocally that at all times he retained a beneficial interest in each of the accounts and maintained total control over each account. The Debtor claims his answers during the deposition were misconstrued.

At issue in this Motion are the ownership interests of the Prepetition Property. The Trustee maintains that all accounts are property of the estate, despite their various forms of legal ownership. The Debtor disputes that he had full beneficial ownership of the Trust Account because it was set up for the benefit of his children and the act of borrowing money with a promissory note illustrates he had no ownership in the Trust. Debtor disputes that the DBC Account was utilized for personal expenses, and claims it was used solely for business expenses in his efforts to obtain work. The Debtor asserts that the Royal Bank Account was a brokerage account owned by Debtor's son, Eric Schwartz, and thus is not property of the estate. However, in his deposition, Eric Schwartz makes clear that he did not fund or receive any money from the Royal Bank Account. (Eric Schwartz Dep. 90:18 – 91:17, May 16, 2013). Debtor additionally claims that the money transferred into the Royal Bank Account was to provide his daughter, Melanie Schwartz, with financial assistance for her company, "The Spot."

## DISCUSSION

### I. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

5

party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne,* 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss,* 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey,* 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.,* 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick,* 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson,* 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.*

6

Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.,* 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.,* 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

**II.     Whether the Bank Accounts are Property of the Estate**

A bankruptcy court may require a debtor's turnover of prepetition property under Section 542(a) if it finds such property is property of the estate. Under Section 541(a)(1), "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate and, under Section 542(a), all property must be delivered to the trustee and accounted for "unless such property is of inconsequential value or benefit to the estate." This broad language was intended by Congress to be inclusive of all interests of the debtor. *United States v. Whiting Pools Inc.,* 462 U.S. 198, 205 (1983). "[T]he Bankruptcy Code is not concerned with the technicalities of title when it comes to determining property of the

7

estate." *In re NJ Affordable Homes Corp*, 2006 WL 2128624 at *8 (Bankr. D.N.J. June 29, 2006) (internal quotation omitted). Regardless if an interest is of "conditional, future, speculative or equitable nature . . . [it] does not prevent it from becoming property of the bankruptcy estate." *In re Anders*, 151 B.R. 543, 545 (Bankr. D. Nev. 1993). Additionally, "[p]roperty which a debtor in bankruptcy has the unfettered ability to possess and own . . . . is property of the debtor's estate." *Matter of Rolfe*, 34 B.R. 159, 161 (1983) (Bankr. N.D. Ill. 1983).

    a.    **The DBC Account**

In the present case, the DBC Account belonged to DBC and contained $12,242 as of the Petition Date. The Debtor held a 100% membership interest in DBC both before and after the Petition Date. Debtor acknowledged having an interest in DBC in his answer to the Complaint, but claims DBC was not operating and had no assets or income when the petition was filed. It is undisputed that the DBC Account was funded with money from the 4009 Account, an account legally and beneficially owned by the Debtor. The Debtor admitted in his deposition that he was in exclusive control of the DBC Account, that he used DBC Account funds after the Petition Date for his daily living expenses, and that he received profits from his equity interest in DBC. (Kenneth Schwartz Dep. 113:18-25, 116:5-25, 117:1-19, June 12, 2013). Thus, the Trustee asserts that the DBC Account was in the Debtor's possession, custody, or control during the bankruptcy case.

The Debtor has not asserted that the DBC Account was of inconsequential value or benefit to the estate, but asserts that it was a corporate account for a non-operating entity and the funds were unavailable to the estate. The Debtor asserts that since the DBC Account was owned

by DBC and was largely used for corporate purposes, the funds from the DBC Account are not property of the estate. Debtor cites no case law to support his contention.

In *In re Barr*, the debtor failed to include in his petition his interest in certain companies in which he had stock ownership. The court stated that "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Rezin v. Barr* (*In re Barr*), 207 B.R. 168, 173 (Bankr. N.D. Ill. 1997) (quoting *Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992)). Additionally, the court held that both a debtor's stock ownership of a corporation and profits therefrom are property of the estate. *In re Barr*, 207 B.R. 168, 175 (Bankr. N.D. Ill. 1997). Similarly, in *In re New Jersey Mobile Dental Practice, P.A.*, 2012 WL 3018052 (Bankr. D.N.J. July 24, 2012), the Court denied the debtor's discharge when, as the sole owner of his dental practice ("NJMDP"), he opened two bank accounts in the name of NJMDP that he routinely used for personal expenses and failed to schedule an interest in the accounts and also failed to disclose transactions on his monthly operating reports in his personal bankruptcy.

Here, based on Debtor's 100% interest in DBC and his personal use of the money in the account, the funds in the DBC Account are unquestionably property of the estate. *See In re Barr*, 207 B.R. 168, 175 (Bankr. N.D. Ill. 1997).

      b.    <u>**The Trust Account**</u>

At the time of the Petition Date, the Trust Account contained $21,975. While legal title to the Trust Account was vested in the Trust, the Debtor admitted using the Trust Account to support his personal living expenses. Debtor asserts that he was forced to borrow money from the Trust due to his financial circumstances in 2009 and that the transfer of funds he received was in exchange for a promissory note that obligated him to repay the entire amount. Debtor

asserts that he was never a beneficiary of the Trust, held no interest, and merely borrowed money from his children with the intention to repay it. The Debtor does not assert the property was of inconsequential value or benefit to the estate.

The Trustee maintains that the Trust was a sham used to shelter funds and since it was funded from an account legally and beneficially owned by the Debtor, he was the true beneficial owner of the Trust Account. Debtor acknowledged in his deposition that he and his children understood all the money belonged to the Debtor and that his children never received any of the funds from the Trust Account. (Kenneth Schwartz Dep. 62:7 – 70:12, June 12, 2013). The Trustee contends that the Debtor's admissions illustrate his dominion and control over the Trust Account. In his reply, the Trustee asserts that while loans were made from the Trust, none of the notes is payable to the Trust, but rather to his children, Eric or Melanie Schwarz, and that the notes are payable "on-demand," suggesting that no such demand will ever be made, given the Debtor's control over the Trust Account. Moreover, in his deposition, Eric Schwartz explained that he had no control over the funds in the Trust Account. (Eric Schwartz Dep. 84:19 – 85:9, May 16, 2013).

In *In re Stasz*, BAP CC-10-1145-PADKI, 2011 WL 3299162 (B.A.P. 9th Cir. Apr. 5, 2011) *aff'd,* 520 F. App'x 547 (9th Cir. 2013), the debtor fully funded a trust and subsequently failed to include an interest in that trust on Schedule A of her petition. The court rejected the argument that the trust was held for the benefit of other parties because there was no evidence of a manifested intent to create a trust, and thus ruled the trust was property of the estate subject to turnover to the trustee. *Id.* Similarly, in *In re Rabinowitz*, 2012 WL 1072212 (Bankr. D.N.J. March 29, 2012), the court denied a discharge where the debtor secreted money in his attorney's

trust account, controlled disbursements from the trust account for the benefit of insiders, and failed to disclose the funds to avoid a levy by a secured judgment creditor.

Here, the Trust Account was totally and ultimately controlled by the Debtor and used for his benefit. It is clear that the Debtor had an unfettered ability to possess and own the Trust Account funds. As such, the Trust Account is held to be property of the estate. *See Matter of Rolfe*, 34 B.R. 159, 161 (1983).

### c. The Royal Bank Account

At the time of the Petition Date, the Royal Bank Account was held in the name of the Debtor's son, Eric Schwartz, and contained $100,000. The Debtor admitted that he funded the $100,000 in the account with $80,000 from his interest in Heritage Holdings, LLC and $20,000 from the 4009 Account. (Kenneth Schwartz Dep. 55-56; 83-84, June 12, 2013). Moreover, the Debtor admitted that post-petition he used over $70,000 for his daughter's company, The Spot, and further utilized over $30,000 for his personal living expenses. Significantly, at his deposition, Debtor asserted:

> To the best of my recollection, Steve, the-- my account always had Eric's name on it with me, even though I controlled the money. I always controlled it, but I had Eric on as a signee on the check in case he had to sign for me or he managed my money for me. I would get money and I would just pass it on to him and he would pay my bills. He would do-- anything I told him what to do with my money, he would do.

(Kenneth Schwartz Dep. 55:16 – 56:24, June 12, 2013) (emphasis added). The Debtor admits to depositing funds into the Royal Bank Account, but argues he never had legal title to the account. The Trustee asserts that the Debtor's admissions show ownership, control, and interest in the account, and thus must be considered property of the estate.

11

Here, the Debtor made a significant transfer to fund this account, held nominally in the name of his son. At his deposition, the Debtor acknowledged that he controlled the checkbook and that it was his money. As previously stated, "the Bankruptcy Code is not concerned with the technicalities of title when it comes to determining property of the estate." *In re NJ Affordable Homes Corp*, 2006 WL 2128624 at *8 (Bankr. D.N.J. June 29, 2006) (internal quotation omitted) Thus, because the Debtor provided funds into the account and admitted that the money functionally belonged to him, the Royal Bank Account is also property of the estate.

### III.     Whether the Debtor's Discharge Should be Revoked Pursuant to Section 727(d)(2)

Under Section 727(d)(2), the court shall revoke a debtor's discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement of such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2). The property of the estate element has been satisfied with respect to the Prepetition Property as noted in the analysis above. Thus, the only remaining issue as to revocation of discharge is whether the Debtor knowingly and fraudulently failed to report or surrender such property to the Trustee.

As with any cause of action wherein intent is an issue, "a determination concerning fraudulent intent depends largely on an assessment of the credibility and demeanor of the debtor." *See Provident Bank v. Pandolfelli,* 2011 WL 5900809 (Bankr. D.N.J. 2011) (quoting *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir. 1997)). Fraud "may be proven by evidence that the [d]ebtor[] w[as] aware the omitted assets existed and that [he] knew failure to list the assets would mislead creditors or the Trustee" and is "implied where it is shown that the [d]ebtor[] acted recklessly in not reporting assets. *In re Barr*, 207 B.R. 168, 176 (Bankr. N.D.

12

Ill. 1997). "Fraudulent intent may also be based on inferences drawn from a course of conduct or inferred from all of the surrounding circumstances." *Id.* (internal quotations omitted).

The Trustee asserts that the Debtor, a sophisticated contractor and businessman, knew that failure to disclose the Prepetition Property, which was funded and used by him for personal purposes, would mislead his creditors or the Trustee. The Debtor contends that the mere receipt of the assets, with nothing more, is insufficient to revoke discharge. Debtor emphasizes his reliance on his prior counsel's advice, and that his bankruptcy counsel told him the Prepetition Property could properly be excluded. Debtor makes the argument that "reliance on his attorney's advice may excuse acts that otherwise bear indicia of fraud" and that such a defense may "prevent a finding of actual fraud if the advice is reasonable and the attorney was fully informed before giving it." *In re Ovel*, 06-01150, 2008 WL 5111340 at *4 (Bankr. N.D. Iowa Dec. 3, 2008); *In re Markey*, 378 B.R. 594, 604 (Bankr. D. Minn. 2007).

At the very least, the Court finds that the Debtor's failure to report the Prepetition Property constitutes recklessness, which is sufficient to support a finding of fraudulent intent. There is no dispute that the Debtor knew that the Prepetition Property existed. He was the architect of the various account schemes. Based upon the Debtor's admissions, he funded the respective accounts and used them for his personal living expenses before and after the Petition Date without disclosure to creditors or the Trustee. The Debtor's course of conduct shows that he failed to disclose: (i) the pre and post-petition existence and use of numerous bank accounts; (ii) the existence of prepetition business interests; (iii) an interest in the Trust; and (iv) a complicated web of transfers orchestrated by the Debtor of his funds between various bank accounts that he controlled.

The Court does not find credible the Debtor's assertions that he believed the Prepetition Property was unavailable to the estate, or that his prior counsel advised him not to disclose such

accounts. The evidence establishes that the Debtor consistently exercised dominion and control over the Prepetition Property and thus could not have realistically believed he had no interest in the accounts. *See In re Kleinman*, 05-55211 NLW, 2011 WL 5528250 (Bankr. D.N.J. Nov. 4, 2011) (where the debtor is a sophisticated businessman, his failure to disclose certain interests was intentional and intended to mislead). Here, Debtor's conduct, both pre and post-petition, evidences the Debtor knowingly and fraudulently failed to report his interests in the Prepetition Property. Accordingly, the Motion is granted and his discharge is revoked under 11 U.S.C. § 727(d)(2).

## **CONCLUSION**

For the above stated reasons, the Court finds that the Prepetition Property was property of the estate and that the Debtor knowingly and fraudulently failed to report and surrender such property to the Trustee in violation of 11 U.S.C. § 727(d)(2). The Trustee's motion for summary judgment on counts one and two of the Complaint is granted.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 12, 2014